# MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION v. WASHINGTON BUSINESS PARK ASSOCIATES ET AL.

[No. 147, September Term, 1981.]

*Decided September 7, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thurman H. Rhodes, Associate General Counsel,* with whom were *Arthur S. Drea, Jr., General Counsel,* and *Sanford E. Wool, Deputy General Counsel,* on the brief, for appellant.

*Russell W. Shipley,* with whom was *Edward C. Gibbs, Jr.,* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This is yet another contest between developers and planning authorities over the subdivision of vacant land. See *Coffey v. Md. Nat'l Cap. P & P Comm'n,* 293 Md. 24, 441 A.2d 1041 (1982), and *Board of County Comm'rs v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979), for an account of two earlier

skirmishes on this issue. The appellant in this case, Maryland-National Capital Park and Planning Commission (the Commission), is the same commission which was involved in *Coffey.* It acts under the authority of Maryland Code (1957, 1978 Repl. Vol.) Art. 66D. In the posture in which the case reaches us we deem it advisable in the interest of justice to remand the case without affirmance or reversal under Maryland Rule 871 a for further proceedings.

The controversy here can be better understood by reference to the drawing which we attach to this opinion. The appellees submitted to the Commission for approval a preliminary plan to subdivide approximately 56.8 acres of land located in Prince George's County on the southwest side of Annapolis Road (Maryland Rt. 450) north of George N. Palmer Highway (Maryland Rt. 704).

The governing master plan shows Forbes Boulevard as a proposed street on both sides of Annapolis Road. It currently extends from its point of origin, an intersection with George N. Palmer Highway, to the line of this proposed development. The proposed subdivision plan calls for Forbes Boulevard to be extended to a point of intersection with Lottsford Vista Road and no farther. This would be some distance short of Annapolis Road. Lottsford Vista Road, as yet a "paper" street, roughly parallels Annapolis Road and ultimately would intersect with George N. Palmer Highway if access were gained to it through the land of others. The master plan provides for widening Annapolis Road from its present width to that of an arterial highway. The proposal submitted by appellees does not provide for such widening. We were advised at oral argument that the master plan does not call for any restriction of access from subject property to Annapolis Road.

Prior to the hearing held by the Prince George's County Planning Board,[1] the State Highway Administration, to

---

**1.** Code (1957, 1978 Repl. Vol., 1979 Cum. Supp.) Article 66D, § 7-111 (a), provides, "The members of the Commission appointed by the Governing bodies of each county are designated the Montgomery County planning board and the Prince George's County planning board, respectively."

whom a copy of the proposed subdivision plan had been submitted, communicated with the Commission, stating in pertinent part:

"1. This property will be affected by the proposed plans to reconstruct Route 450. The future right of way, based on your Master Plan, is 150' centered on the existing roadway. Efforts on your part to obtain as dedication that area between the existing and proposed right of way line will be appreciated.

"2. We note that the plan does not propose to extend Forbes Blvd. to Route 450 which is a primary facility included in your Glen Dale-Seabrook Master Plan. We believe this road is necessary for several reasons. First, it will be part of a continuous facility that will ultimately extend north of Route 450. Second, it shall provide access from Route 450 to the site. Third, as part of our plans to upgrade Route 50, we are proposing an interchange on U.S. 50 that would connect to Route 704 opposite Forbes Blvd. If this occurs, Forbes Blvd. will take on even greater importance.

"3. The plan proposes to extend Lottsford Vista Road thru the State of Maryland property into the site. This highway is also on the Master Plan. This road is to serve two purposes. First, splitting the traffic on Route 704 between Lottsford Vista Road and Forbes Blvd. will therefore relieve the pressure on Forbes Blvd. Second, it would provide access to Route 704 and Route 450 for all lots incorporated into this site.

"Although we concur with the extension of Lottsford Vista Road several associated matters must be resolved.

"On January 17, 1980 this proposal was presented to Mr. M. S. Caltrider, State Highway Administrator, and he has agreed to support a recommendation to the Maryland Board of Public Works to have the needed right of way dedicated to Prince George's County. However, prior to a formal recommendation, there must be an agreement between the developer and the Md. S.H.A. or Prince George's County whereby if the Board of Public Works approves the dedication, the developer shall dedicate the remainder of Lottsford Vista Road as shown on the plan.

"Since one of the stated purposes for Lottsford Vista Road is to eliminate access to Route 450, a condition must be placed on the approval of the plan stating that no direct access to Route 450 will be allowed with the exception of the Forbes Blvd. connection.

"In connecting Lottsford Vista Road to Route 704, there shall be some serious geometric problems that must be remedied. By allowing this new connection a 5-legged intersection will be created that is not acceptable. I am enclosing a copy of my February 25, 1976 letter to Mr. F. Harris Allen that explains this problem in some detail. I am also enclosing a geometric scheme showing how this problem can be resolved. Before we can allow the intersection to connect to Route 704, the developer will have to agree to a plan that will be implemented by the developer that will eliminate the geometric problems.

"4. You will also note from the geometric scheme we are showing the further improvement of Route 704. These improvements were agreed to by the developer in his entrance permit issued by the Md. S.H.A. for the Forbes Blvd. connection to

Route 704.[2] The developer's construction plans for Lottsford Vista Road must also show these further improvements to Route 704.

"At such time as all of the concerns relative to Lottsford Vista Road have been resolved, we shall recommend to have the right of way transferred."

At the hearing the staff reported to the Commission that its original recommendation was for disapproval but the revised recommendation was for approval subject to dedication of Forbes Boulevard to Annapolis Road, dedication for road widening on Annapolis Road, and providing interior street frontage for all of the lots that front on Annapolis Road. Throughout the hearing the staff members who testified frequently referred to the fact that the master plan showed Forbes Boulevard running all the way through to Annapolis Road while the proposed subdivision plan did not. Among other things, they referred to the traffic problems they foresaw if Forbes Boulevard did not connect with Annapolis Road. *Gaster* was mentioned in the deliberations of the Commission. Obviously, *Coffey* could not be mentioned since it had not been decided. The proposed subdivision plan was approved conditioned upon the appellees' dedicating sufficient land for the extension of Forbes Boulevard north to intersect with Annapolis Road and upon their dedicating land along the length of the frontage on Annapolis Road for the future widening of that thoroughfare. Unfortunately, unlike the situation prevailing in *Gaster,* the reasoning behind the Commission's action does not appear in the record, if it was in fact recorded.

Appellees appealed to the Circuit Court for Prince George's County. They claimed, among other things, that the Commission "has no authority whatsoever to condition

---

**2.** Appellees had previously developed land to the west of and abutting upon this tract. Palmer Highway (Rt. 704) and Forbes Boulevard intersect, as we have already indicated, the point of intersection being some distance to the west of the tract involved in this controversy.

approval of a preliminary plan for subdivision upon the applicant's dedication of a public right of way where, as here, the construction of the right of way bears no substantial relation to the subdivision itself." The Commission contended that its actions were justified under our holding in *Gaster* relative to conformity with the master plan and under Code (1957, 1978 Repl. Vol.) Art. 66D, § 7-115 (e), which states in pertinent part:

> "The Commission may require dedications of streets and roads in connection with the approval of plats of subdivision for interior subdivision roads, roads abutting the subdivision where it is necessary to create a new road as a part of the plan of subdivision to provide for traffic access to another subdivision road, and widening of existing or public roads abutting the subdivision where widening is necessary in order to provide additional right-of-way adequate to serve additional traffic to be created by the subdivision, but in this case no more dedication may be required than will produce a total right-of-way for a secondary road, as defined by the duly adopted Road Code, or by the appropriate county ordinance or regulation or for a primary road if an existing and duly adopted master plan of highways of the Commission designates the road as a primary or arterial road. In no case whatsoever shall dedication of a width wider than that for a primary road be required, and no more than that necessary for a secondary road unless an existing and duly adopted master plan of the Commission designates the road as a primary or arterial road. However, in Prince George's County the master plan of highways is to be approved by the district council."

The language upon which the parties focused was not that relative to interior subdivision roads as one might suppose, but that which spoke of "roads abutting the subdivision where it is necessary to create a new road as a part of the

plan of the subdivision to provide for traffic access to another subdivision road" and "where widening is necessary in order to provide additional right of way adequate to service additional traffic to be created by the subdivision . . . ."

As to Forbes Boulevard, the circuit court judge found "that the Commission could not require dedication of land where there was an insufficient factual and evidentiary showing that the dedication was necessary to deal with the traffic problems created by Plaintiff's subdivision." "[T]he court recognize[d] and dr[ew] to the attention of the parties the intertwining of the issues of the dedication of land along Annapolis Road, and the direct access to Annapolis Road," saying:

> "For example, if direct access to Annapolis Road is granted, then the dedication of land along Annapolis Road for widening may well be necessary, within the meaning of Section 7-115(e), thus requiring the Plaintiff to dedicate the land. Whether there will or will not be direct access to Annapolis Road from the abutting lots is a question that must be clarified and expertly addressed on remand before the court can intelligently rule on the dedication of land on Annapolis Road. This matter must be remanded to the Commission for further determination."

On the issue of the master plan, the trial court stated:

> "The Plaintiff goes [on] to explain that the master plans are 'guidelines' which are not converted into law except by the Sectional Map Amendment, which controls only land use, and does not zone roads. We agree and can find no authority to the contrary."

The Commission appealed to the Court of Special Appeals. The issues presented by the Commission to the intermediate appellate court included a contention that the subdivision plan did not comply with the master plan without the dedication of Forbes Boulevard. It suggested that the circuit court

"misinterpret[ed] the significant role Master Plans are intended to play in the subdivision process," and that the holding which we have quoted above "is in direct contradiction" to our decision in *Gaster.* It pointed out that *Gaster* arose under a different statutory scheme (Art. 66B applicable to non-charter counties), but it claimed "that the statutes involved are so similar as to warrant that the decision be controlling here as well."

The Court of Special Appeals affirmed in an unreported opinion. After quoting § 7-115 (e) it said:

"Of particular relevance, in terms of Forbes Boulevard, is that part of the statute authorizing the Commission to require a dedication for 'roads abutting the subdivision where *it is necessary* to create a new road as a part of the plan of the subdivision *to provide for traffic access to another subdivision road....'* (Emphasis supplied.)[2] As to Annapolis Road, the relevant part is that which authorizes a required dedication for 'widening of existing or public roads abutting the subdivision where widening is *necessary* in order to provide additional right-of-way adequate to serve additional traffic *to be created by the subdivision.'* (Emphasis supplied.)"

The footnote stated:

"Although the condition, as shown on the approved plat, reveals the extended Forbes Boulevard bisecting the tract to be subdivided, there is no assertion by anyone that the extension would constitute an 'interior subdivision road,' to which the first part of the statute might apply; and we shall therefore not consider that question. Both sides treat the extension as in the nature of a road 'abutting the subdivision,' and view the second part of the statute — that requoted above — as being the relevant part."

The Commission then petitioned us for a writ of certiorari. It presented but a single question for review:

"Did the Court err in its interpretation of the Commission's authority under § 7-115 (e), Article 66D, Annotated Code of Maryland, and, in particular, its construction of the word 'necessary' as used therein?"

We granted the writ. Notwithstanding the fact that the sole question presented in the petition was as we have just stated it, the Commission in its brief and in its oral argument before us, in addition to that issue, has argued that the circuit court "exceeded the scope of judicial review in overruling the factual determination made by the Commission that the dedication of Forbes Boulevard and for future widening along Annapolis Road was necessary to serve additional traffic created by the subdivision" and that it erred in finding that the subdivision plan was not required to comply with the master plan. The parties are limited by the question embraced in the grant of certiorari. Hence, the last two contentions are not before us.

*Gaster,* 285 Md. 233, arose in a non-charter county, Cecil, where zoning and planning matters are governed by Art. 66B. The subdivision regulations adopted by the County Commissioners of Cecil County required that a subdivision plan comply with the master plan. The plan in question met all zoning requirements but it specified a density of 2.3 units per acre as against the 1.0 units per acre set forth in the master plan. It failed to meet the requirement that access to and from development tracts should be through roads having capacity and alignment sufficient to protect public safety. In holding that "Cecil County ha[d] validly used the planning tools placed in its hands by the General Assembly to provide for orderly growth for the county," *Id.* at 250, we observed:

"As we noted in *Wash. Co. Taxpayers Ass'n v. Board,* 269 Md. 454, 455-56, 306 A.2d 539 (1973), some confusion exists relative to the terms

planning and zoning, which are not synonymous. Zoning is concerned with the use of property but planning is broader in its concept. 1 E. Yokley, *Zoning Law and Practice* § 1-2 (4th ed. 1978) comments:

Expressing the matter in another way, let us say that zoning is almost exclusively concerned with use regulation, whereas planning is a broader term and indicates the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience and welfare as may be properly embraced within the police power. [*Id.* at 4.]

"There are three integral parts of adequate land planning, the master plan, zoning, and subdivision regulations. The need for subdivision regulations as a part of that planning is well illustrated by the case here. As it is put in 4 R. Anderson, *American Law of Zoning* § 23.03 (2d ed. 1977), '[Z]oning ordinances are not calculated to protect the community from the financial loss which may result from imperfect development. Some of these purposes are sought through the imposition of subdivision controls.' *Id.* at 47. 4 A. Rathkopf, *The Law of Zoning and Planning* Ch. 71 § 2 (4th ed. 1979), gives reasons for subdivision control:

Planning enabling acts and the requirements for plat approval are based upon the realization that homes are no longer generally constructed one at a time for individual owners, resulting in a gradual development which can be controlled by zoning ordinances and local health, building, plumbing, and electrical codes alone. Vacant lots suitable for single

homes in already developed communities have all but disappeared. The great increases in population and the unprecedented demand for homes has necessarily resulted in opening up undeveloped land in outlying areas, and the development thereof by large numbers of homes which may be said to be built all at one time. Where such development takes place without restriction other than zoning restrictions, it is the developer who designs the community in respect to the number, length, width, condition, and location of streets. The developer also determines where the newly arrived inhabitants of the community shall reside, without consideration of the necessity for, or existence of, schools, fire protection, parks, playgrounds, and other public facilities. If subdivisions develop too rapidly, or before the community is ready for the added burdens which an increased population imposes, and without adequate control, the result too often is the creation of deteriorating neighborhoods which create a blight upon the community and a drain upon the municipal purse. [*Id.* at 71-6-7.]

See also 82 Am. Jur. 2d, *Zoning and Planning* § 163 (1976)." *Gaster,* 285 Md. at 246-47.

In this regard, 4 R. Anderson, *American Law of Zoning 2d* § 23.21 at 90 (1977), comments, "Since zoning regulations and subdivision controls are intended to implement a common plan for community development, they must work in concert, not at cross purposes."

A few months ago we had before us in *Coffey,* 293 Md. 24, the issue of whether when subdivision regulations promulgated under Art. 66D require that a proposed subdivision comply with the master plan an application for approval of a preliminary subdivision plan which fails to so comply might be rejected upon that ground. The subdivision plan proposed a maximum development density of 8.0 to 11.9

units per acre. The master plan restricted density to 2.7 to 3.5 dwelling units per acre. We found such noncompliance to be a valid reason for rejection of the plan. We closed that opinion by stating:

"The process of comprehensive zoning or rezoning is a time consuming one. It would be virtually impossible to adopt comprehensive rezoning changes calculated to impose the same density requirements as the master plan which would become effective simultaneously with the adoption of a new master plan that called for lower density development than the preceding plan.

"Here we have a regulation duly enacted by the legislative body for Prince George's County which specifies that the planning board shall not approve a subdivision plat not in compliance with the master plan. This subdivision regulation is as much entitled to obedience as any other legislative enactment. The need for the regulation specifying that a subdivision plan must conform to the master plan can be illustrated by comparison to the putting of water in a teacup drop by drop. After a period of time there comes the drop which will cause the cup to overflow. By analogy, developing some of the lots in conformity with the existing zoning will not disrupt the master plan. Concentrated use and development, however, will disrupt it. The legislative body wished to avoid this when it specified that subdivisions must comply with the master plan. Accordingly, the Commission was justified in rejecting Coffey's proposed subdivision for his failure to conform that proposal with the master plan." 293 Md. at 30-31.

We take cognizance of the suggestions that have been made below that master plans are intended to be mere guides. We point out that in *Coffey* we said:

"Cases making statements relative to master plans

being guides have arisen in the context of an attempted piecemeal change in zoning. For instance, in *Chapman v. Montgomery County,* 259 Md. 641, 643, 271 A.2d 156 (1970), Judge Finan said for the Court, 'A "Master Plan" is not to be confused as a substitute for a comprehensive zoning or rezoning map, nor may it be equated with it in legal significance.' No opinion of this Court has made a statement relative to master plans acting only as guides in the context of the facts here involved." 293 Md. at 26.

Code (1957, 1978 Repl. Vol.) Art. 66D, § 7-116 (a) indicates that the Commission may adopt certain subdivision regulations in exercising the power granted to it by § 7-115 of approving subdivisions of land generally. Among other things, the statute states that the regulations may provide for "the coordination of roads within the subdivision with other existing planned or platted roads or with other features of the district or with the Commission's general plan or with any road plan adopted or approved by the Commission as part of the Commission's general plan . . . ."

Rule 831 c 3 requires appellants to print in their brief or appendix the "verbatim text of all pertinent . . . statutes, ordinances, rules and regulations." We have been provided here as a part of the subdivision regulations Prince George's County Code §§ 24-102 (d) and 24-103 (a) (2) and (4). Section 24-102 (d) provides:

"The Commission, in studying the Preliminary Subdivision Plat, will take into consideration the requirements of the community and the best use of the land being subdivided. Particular attention will be given to width, arrangement and location of streets, surface drainage, lot sizes and arrangement, as well as any Master Plan requirements such as parks, school sites, boulevards and main highways. Adequate street connections will be required to insure free access to adjoining subdivisions and lands."

Section 24-103 (a) (2) and (4) states:

> "(2) All streets which are designated as part of the main highway system on the Master Plan shall be coterminous with adjoining links in the system and at the same or greater widths."

> "(4) As far as practicable, all proposed streets shall be continuous and in alignment with existing streets."

*Coffey,* 293 Md. 24, was decided subsequent to consideration of this case by the Commission and both courts which have reviewed the matter. Moreover, although failure of the proposed subdivision to comply with the master plan was argued before the Commission, both lower courts, and us, that issue is not properly before us, as we have pointed out. We do not know why the Commission reached the conclusion it did. Its action may have been based upon noncompliance with the master plan, some other provision of the subdivision regulations authorized by statute, a desire to accommodate the State Highway Administration, or some other reason. Given those facts we believe the Commission should have an opportunity to address the issue here with knowledge of the fact that in *Coffey* we have held that when the Prince George's County subdivision regulations require that a subdivision plan comply with a master plan, that plan is not considered a mere guidepost or set of recommendations as in zoning matters. The argument advanced by appellees that conformity of a subdivision plan to a master plan is limited to the zoning aspect of the master plan must fall when, by way of example, one notes the potential consequences of subdivision approval if a master plan called for denial of access to a street shown on the master plan but a subdivision plan called for numerous entrances to that street. Such entrances could destroy the plan. Two instances of highway construction on the Eastern Shore of Maryland illustrate the point. U.S. Rt. 13 in the City of Salisbury formerly went down narrow city streets. A by-pass to the east was constructed before World War II. Denial of access was not thought about in those days. The congestion created

along what was intended to be a by-pass has caused the State of Maryland to spend hundreds of thousands of dollars and to use up acres of an irreplaceable natural resource (farmland) by constructing a by-pass yet farther to the east. U.S. Rt. 213 formerly went through the streets of the City of Easton. The number of the route was changed to U.S. Rt. 50 and a dual highway was constructed to the east of Easton by way of a by-pass. Although not as congested as Rt. 13 in Salisbury, motorists must materially reduce their speed in order to get through the built-up area.

We point out that *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick,* 286 Md. 1, 405 A.2d 241 (1979), upon which appellees rely, involved a situation in no way comparable to that of the case at bar. The restrictions imposed upon the land there were such that the landowner was obliged to obtain permission from the governmental entity to make any use whatever of the land in question during a period not to exceed three years. He was paid nothing for this. In other words, he was obliged to obtain permission from the governmental unit if he wanted to enter upon his land to cut weeds.

Recognizing the essential character of the master plan, textwriters have pointed out that approval of subdivision plats can be legitimately conditioned upon the dedication of land for specified public purposes. See, *e.g.,* 7 P. Rohan, *Zoning and Land Use Controls* § 45.04 [1], at 45-91 (1982); 4 Anderson § 23.25, at 106-07. The development and subdividing of land produces an increased demand for community services that would necessitate the expenditure of government funds. Thus, it is reasoned, "the subdivider who creates the demand ought to pay the price and pass it along to the owners of the subdivided and improved land." 7 Rohan § 45.04 [1], at 45-92. *See generally Newton, Circuit Clerk v. American Security Company,* 201 Ark. 943, 950-52, 148 S.W.2d 311 (1941); *Ayres v. City Council of Los Angeles,* 34 Cal.2d 31, 42, 207 P.2d 1 (1949); *Noble v. Chairman and Tp. Com. of Mendham Tp.,* 91 N.J. Super. 111, 117-20, 219 A.2d 335 (1966); *Headley v. City of Rochester,* 272 N.Y. 197, 200-01, 5 N.E.2d 198 (1936); Annot., 11 A.L.R.2d 524, 532-40, 546-53 (1950), and its supplements; Johnston,

*Constitutionality of Subdivision Control Exactions: The Quest for a Rationale,* 52 Cornell L.Q. 871 (1967); Landau, *Urban Concentration and Land Exactions for Recreational Use: Some Constitutional Problems in Mandatory Dedication Ordinances in Iowa,* 22 Drake L. Rev. 71 (1972); and Heyman & Gilhool, *The Constitutionality of Imposing Increased Community Costs on New Suburban Residents Through Subdivision Exactions,* 73 Yale L.J. 1119 (1964).

We remand the case under Rule 871 a without affirmance or reversal. Both parties shall be free to introduce such additional evidence as they deem requisite when the matter comes on for hearing before the Commission. If the Commission on the remand reaches the same conclusion it reached previously, it must provide the bases for its determination. When its reasons are supplied its actions may be properly evaluated in the appellate process, if such becomes necessary. If, for instance, the proposed widening of Annapolis Road is based upon the statutory provision relative to necessity "to provide additional right-of-way adequate to serve additional traffic to be created by the subdivision," the rationale for this conclusion must be spelled out in detail. If the Commission continues to conclude that Forbes Boulevard should be extended to Annapolis Road, the reasoning for this conclusion must be set forth.

> *Judgment of the Court of Special Appeals vacated and case remanded to that Court to vacate the judgment of the Circuit Court for Prince George's County and to remand the case to that Court with directions to vacate the order of the Maryland-National Capital Park and Planning Commission and to remand the case to that Commission for further proceedings consistent with this opinion; costs to be equally divided between the parties.*

N

FORBES
BOULEVARD

ANNAPOLIS
ROAD
(MARYLAND
RT. 450)

LOTTSFORD
VISTA ROAD

LAND OF
STATE OF
MARYLAND

GEORGE N. PALMER
HIGHWAY
(MARYLAND / RT. 704)