RED HILL COALITION, INC., ET AL. *v.* TOWN PLAN
AND ZONING COMMISSION OF THE TOWN OF
GLASTONBURY ET AL.
(13665)
(13666)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued June 8—decision released August 22, 1989

*Suzanne Y. Mattei,* for the appellant in the first case (plaintiff Connecticut Fund for the Environment).

*Dwight H. Merriam,* with whom were *Brian R. Smith* and *Norma Darshan Brach,* for the appellants in the second case (named plaintiff et al.).

*Richard R. Brown,* with whom was *Eric R. Gaynor,* for the appellee in both cases (named defendant).

*David F. Sherwood,* for the appellee in both cases (defendant Red Hill Development Corporation).

*Clarine Nardi Riddle,* acting attorney general, and *Robert E. Walsh,* assistant attorney general, filed a brief for the commissioner of agriculture et al. as amici curiae.

*David B. Losee* and *Holly Jean Bray* filed a brief for the Home Builders Association of Connecticut, Inc., as amicus curiae.

CALLAHAN, J. The present appeal involves the development of a fifty acre parcel of land located in the Red Hill section of Glastonbury owned by the defendant Red Hill Development Corporation (corporation). The plaintiffs, the Red Hill Coalition, Inc. (coalition),[1] Thomas P. Fitzgerald, a member of the coalition and a landowner whose property abuts the southern border of the land in question, Julianne Steffens, president of the coalition and a resident of Glastonbury, and the Connecticut Fund for the Environment (CFE),[2]

---

[1] The Red Hill Coalition, Inc., is a nonprofit corporation dedicated to the preservation of the Red Hill section of Glastonbury.

[2] The CFE is a nonprofit corporation "dedicated to the conservation and preservation of the state's natural resources."

appealed from the decision of the trial court affirming the decision of the defendant Glastonbury town plan and zoning commission (TPZ) conditionally approving the corporation's application for a thirty lot subdivision.[3] The plaintiffs claim on appeal that the trial court erred in concluding that the TPZ was not required to consider alternatives that would prevent or reduce the impairment or destruction of agricultural land pursuant to General Statutes § 22a-19 (b).[4] Further, the coalition, Steffens and Fitzgerald maintain that their due process rights were violated because the TPZ received new evidence after the close of the public hearings.

The following facts are relevant to this appeal: On December 13, 1985, the corporation filed an application with the TPZ for approval of a thirty-three lot subdivision. On January 6, 1986, both the Red Hill Coalition, Inc., and the CFE intervened in the administrative proceedings pursuant to General Statutes § 22a-19 (a). According to the coalition and the CFE the subdivi-

[3] The commissioner of agriculture and the commissioner of environmental protection were granted permission to file a brief as amici curiae in support of the plaintiffs. The Home Builders Association was granted permission to file a brief as amicus curiae in support of the defendants.

[4] "[General Statutes] Sec. 22a-19. ADMINISTRATIVE PROCEEDINGS. (a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

sion and subsequent development of the land in question would result "in the irreversible elimination of major portions of prime agricultural land. . . ." Public hearings were held by the TPZ on June 25, 1986, and July 15, 1986, at which it heard testimony regarding the proposed subdivision from the corporation, the plaintiffs and members of the general public. At the close of the public hearings, the TPZ did not take action on the corporation's application because it was awaiting a report from the Glastonbury conservation commission.[5] On September 3, 1986, having received a favorable report from the conservation commission concerning the development proposed by the corporation, the TPZ held a public meeting at which time additional comments were received from the corporation. Although the coalition and Fitzgerald were present at this final meeting, the CFE and Steffens did not attend. Subsequently, the TPZ conditionally approved the corporation's application, allowing the land to be subdivided into thirty lots.

On September 24, 1986, the plaintiffs appealed the decision of the TPZ to the Superior Court pursuant to General Statutes (Rev. to 1985) § 8-28 (a), amended by

[5] In addition to the subdivision application submitted to the TPZ, the corporation also applied to the Glastonbury conservation commission for a Class "B" permit, pursuant to the Inland Wetlands and Watercourses Act; General Statutes § 22a-36 et seq.; and § 5 of the Glastonbury Inland Wetland and Watercourse Regulations, which would enable them to construct a roadway across wetlands existing on the land in question and also to construct storm drainage outlets on the land. The conservation commission approved the corporation's application from which the coalition, Fitzgerald and Steffens appealed to the Superior Court. The trial court held that the conservation commission had properly approved the corporation's application. The plaintiffs thereafter appealed to the Appellate Court and we transferred the case to ourselves pursuant to Practice Book § 4023. *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 563 A.2d 1339 (1989). The issues in the present appeal are distinct from those presented in *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, and therefore require separate consideration.

Public Acts 1985, No. 85-284, §§ 4, 5.[6] In a memorandum of decision dated October 11, 1988, the trial court upheld the TPZ's approval of the corporation's subdivision application. Shortly thereafter, the coalition, Fitzgerald and Steffens filed a petition for certification to appeal in the Appellate Court. The CFE also filed a petition for certification. The Appellate Court granted both petitions on December 8, 1988. We subsequently transferred both appeals to ourselves pursuant to Practice Book § 4023 and, because the issues involved are identical, have consolidated them for review.

General Statutes § 22a-19 (a) provides that "[i]n any administrative . . . proceeding . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or *other natural resources* of the state." (Emphasis added.) In the present appeal the plaintiffs claim as the basis for intervention that the land in question is prime agricultural land. Arguing that agricultural land is a natural resource, the plaintiffs

[6] General Statutes (Rev. to 1985) § 8-28 (a), amended by Public Acts 1985, No. 85-284, §§ 4, 5, provides: "APPEAL FROM PLANNING COMMISSION TO SUPERIOR COURT. REVIEW BY APPELLATE COURT. (a) Notice of all official actions or decisions of a planning commission, not limited to those relating to the approval or denial of subdivision plans, shall be published in a newspaper having a substantial circulation in the municipality within fifteen days after such action or decision. Except as provided in section 8-30, any person aggrieved by an official action or decision of a planning commission, including a decision to take no action, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of a planning commission, may appeal therefrom, within fifteen days from the date when notice of such action or decision was so published, to the superior court for the judicial district within which the municipality with such planning commission lies. In those situations where the approval of the planning commission must be inferred because of the failure of the commission to act on an application, any per-

contend that (1) they had a right to intervene in the TPZ proceedings under § 22a-19 (a), and (2) by virtue of their intervention in those proceedings under § 22a-19 (a), the TPZ was required under § 22a-19 (b) to consider any unreasonable pollution, impairment or destruction of the alleged agricultural land being subdivided, and to explore all feasible and prudent alternatives to the proposed subdivision that would preserve some or all of the agricultural land in question.

The defendants contend that the appeals of those plaintiffs whose standing is based solely upon their status as petitioners under § 22a-19 (a) should be dismissed because (1) the statute does not authorize intervention in a subdivision application proceeding conducted by a municipal planning commission, and (2) the legislature never intended that the term "other natural resources," the alleged pollution, impairment or destruction of which authorizes intervention, include "prime agricultural land," the basis relied upon in the petitions to intervene filed by the plaintiffs. Although we agree with the plaintiffs that they had the right to intervene under § 22a-19 (a) in order to raise the environmental issues alleged in their petitions, we agree with the defendants that the term "natural resources" as used in the

son aggrieved by such approval, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in such approval, may appeal therefrom within twenty days after the expiration of the period prescribed in section 8-26d for action by the commission to the superior court for the judicial district within which the municipality with such planning commission lies. Notice of such appeal shall be given by leaving a true and attested copy thereof with, or at the usual place of abode of, the chairman or clerk of said commission, and by serving a true and attested copy upon the clerk of the municipality. The commission shall return either the original papers acted upon by it and constituting the record of the case appealed from or certified copies thereof. There shall be no right to further review except upon certification for review to the appellate court in the manner provided in section 8-8."

The TPZ was cited by the plaintiffs as the sole defendant on appeal. On November 18, 1986, however, the trial court granted the corporation's motion to be made a party defendant.

statute does not include agricultural land. Accordingly, we conclude that the TPZ was not required to consider the plaintiffs' allegation of pollution, impairment or destruction of agricultural land pursuant to § 22a-19 (b) or the availability of reasonable alternatives to the proposed subdivision.

I

Contrary to the defendants' position, § 22a-19 (a) does authorize intervention in a subdivision review proceeding conducted by a municipal planning commission. It plainly provides that intervention is authorized in "*any* administrative, licensing or other proceeding, and in any judicial review thereof made available by law." (Emphasis added.) Proceedings before planning and zoning commissions are classified as administrative. See, e.g., *Vose* v. *Planning & Zoning Commission,* 171 Conn. 480, 483, 370 A.2d 1026 (1976). Accordingly, the plain and unambiguous language of § 22a-19 (a) permits intervention in proceedings conducted by a municipal planning commission. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986). " 'It is well settled that a statute must be applied as its words direct. . . .' 'Where the language used is clear and unambiguous, we will not speculate as to some supposed intention. . . .' " (Citations omitted.) Id.[7]

---

[7] The defendants rely on *Delaney* v. *Planning & Zoning Commission,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 258389 (September 16, 1985). In *Delaney,* the Superior Court held that the plaintiffs had no right to intervene under General Statutes § 22a-19 (a) in a subdivision review proceeding because such a proceeding was not a permit procedure or process. Specifically, the court stated that because the planning and zoning commission was required to approve a subdivision application if it conformed to the conditions stated in the applicable regulations, the commission had no discretion to consider environmental issues. In the present case the trial court concluded that because the TPZ considered environmental issues by reviewing the conservation commission's report, intervention in a zoning commission hearing was appropriate under

The defendants' additional argument that the plaintiffs were not entitled to intervene pursuant to § 22a-19 (a) because agricultural land is not a natural resource puts the cart before the horse. Section 22a-19 (a) makes intervention a matter of right once a verified pleading is filed complying with the statute, whether or not those allegations ultimately prove to be unfounded. We have declared that the statute "permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding for the limited purpose of raising environmental issues." *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 248 n.2, 470 A.2d 1214 (1984). In *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 490, 400 A.2d 726 (1978), we concluded that one who filed a verified pleading under § 22a-19 (a) became a party to an administrative proceeding upon doing so and had "statutory standing to appeal for the limited purpose of raising environmental issues." "It is clear that one basic purpose of the act is to give persons standing to bring actions to protect the environment." *Belford* v. *New Haven,* 170 Conn. 46, 53–54, 364 A.2d 194 (1975).

We agree with the trial court that the plaintiffs, being entitled under § 22a-19 (a) to intervene for the purpose of raising environmental issues on the basis of the allegations of their verified pleadings, had standing to appeal from the action of the TPZ in approving the subdivision application.

## II

The plaintiffs' claim that the TPZ failed to comply with the edict of § 22a-19 (b) to "consider the alleged

§ 22a-19 (a). The trial court declined, however, to state whether § 22a-19 (a) "applies to ab initio subdivision review without the mandatory prior determination of environmental issues" as was decided by the Superior Court in *Delaney* v. *Planning & Zoning Commission,* supra. We decline to adopt the reasoning set forth in *Delaney,* as we conclude that the language in § 22a-19 (a) clearly and unambiguously allows intervention in "any" administrative hearing or other proceeding.

unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state," as well as feasible alternatives to the proposed subdivision, raises the issue of whether agricultural land or "prime agricultural land" as alleged, constitutes a natural resource within the intention of the statute. The duty of an administrative agency under § 22a-19 (b) is limited to the consideration of the effects of a proposal upon "air, water or other natural resources."

In determining whether agricultural land is a natural resource under § 22a-19, we note that "[o]ur fundamental objective in construing a statute is to carry out the apparent intent of the legislature." *Sutton* v. *Lopes,* 201 Conn. 115, 118, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986). "As is true in every case involving the construction of a statute, our starting point must be the language employed by the legislature." *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 366, 446 A.2d 3 (1982). Agricultural land is not specifically referred to in § 22a-19 (a). Therefore, to determine whether the legislature meant to include agricultural land within the term "natural resources," we turn to the statute's legislative history and other extrinsic sources to attempt to ascertain the intent of the legislature. *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 667, 560 A.2d 975 (1989); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). A perusal of the legislative history of § 22a-19 fails to disclose any indication of an intent to include agricultural land within the term "natural resources of the state." See generally 14 S. Proc., Pt. 3, 1971 Sess., pp. 1082–97; 14 H.R. Proc., Pt. 2, 1971 Sess., pp. 733–65. Moreover, agricultural land is not mentioned in any other section of the Environmental Protection Act (EPA). General Statutes § 22a-14 et seq.

The legislature's failure to provide for agricultural land in § 22a-19 or in any other section of the EPA is significant because in other statutes where the legislature has chosen to protect agricultural land it has done so expressly. For example, the Agricultural Protection Act; General Statutes §§ 22-26aa through 22-26ii; and General Statutes § 12-107a, which affords owners of farmland a form of tax relief, both recognize the importance of farm and agricultural land and make special provisions to protect it. Furthermore, General Statutes § 22a-1, which is part of the Environmental Policy Act; General Statutes §§ 22a-1 through 22a-13; specifically states that "air, water, *land* and other natural resources" (emphasis added) are, as a general policy, to be conserved and protected.

Given this background, we believe that if the legislature had desired to include agricultural land as a natural resource and thus to trigger the application of § 22a-19 (b) of the EPA it would have explicitly so provided. *Middletown* v. *Hartford Electric Light Co.,* 192 Conn. 591, 596, 473 A.2d 787 (1984). "Absent such language by the legislature, this court cannot 'engraft amendments into the statutory language.' *Burnham* v. *Administrator,* [184 Conn. 317, 325, 439 A.2d 1008 (1981)]; *State Medical Society* v. *Board of Examiners in Podiatry,* [208 Conn. 709, 727, 546 A.2d 830 (1988)]. . . . As we have stated in numerous other cases, 'it is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and the courts must apply statutory enactments according to their plain terms.' *Federal Aviation Administration* v. *Administrator,* [196 Conn. 546, 549–50, 494 A.2d 564 (1985)]; *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 107, 425 A.2d 588 (1979); *Weingarten* v. *All-*

*state Ins. Co.,* 169 Conn. 502, 507–508, 363 A.2d 1055 (1975)." *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 181, 550 A.2d 8 (1988).[8]

Furthermore, we note that " '[i]n construing a statute, common sense must be used and courts will assume that [the legislature intended to accomplish] a reasonable and rational result . . . .' *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975)." *Caltabiano* v. *Planning & Zoning Commission,* supra, 667. "The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. *Commissioner of Internal Revenue* v. *Brown,* 380 U.S. 563, 571, 85 S. Ct. 1162, 14 L. Ed. 2d 75 (1965); *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 609, 266 A.2d 382 (1969); see *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980). 'When two constructions are possi-

---

[8] In support of their argument that agricultural land is a natural resource under General Statutes § 22a-19, the plaintiffs cite cases from other jurisdictions that find it to be so. See *Hicklin* v. *Orbeck,* 565 P.2d 159, 173 (Alaska 1977), rev'd on other grounds, 437 U.S. 518, 98 S. Ct. 2482, 57 L. Ed. 2d 397 (1978); *Dye* v. *Burdick,* 262 Ark. 124, 139, 553 S.W.2d 833 (1977); *Twain Harte Homeowners Assn., Inc.* v. *County of Tuolumne,* 138 Cal. App. 3d 664, 188 Cal. Rptr. 233 (1982); *Love* v. *Board of County Commissioners,* 105 Idaho 558, 559–60 n.1, 671 P.2d 471 (1983); *Wilson* v. *McHenry,* 92 Ill. App. 3d 997, 416 N.E.2d 426 (1981); *LaSalle National Bank* v. *Kendall,* 55 Ill. App. 3d 219, 370 N.E.2d 1283 (1977); *Maryland-National Capital Park & Planning Commission* v. *Washington Business Park Associates,* 294 Md. 302, 449 A.2d 414 (1982); *Board of County Commissioners* v. *Gaster,* 285 Md. 233, 248, 401 A.2d 666 (1979); *1000 Friends of Oregon* v. *Marion County,* 64 Or. App. 218, 668 P.2d 412 (1983). Further, the plaintiffs cite several cases broadly construing the term "natural resources." See *New York* v. *Exxon Corporation,* 633 F. Sup. 609 (S.D.N.Y. 1986); *Portage* v. *Kalamazoo County Road Commission,* 136 Mich. App. 276, 355 N.W.2d 913 (1984); *Kimberly Hills Neighborhood Assn.* v. *Dion,* 114 Mich. App. 495, 320 N.W.3d 668 (1982); *Michigan United Conservation Clubs* v. *Anthony,* 90 Mich. App. 99, 280 N.W.2d 883 (1979). We are not bound by the cited cases and do not find them controlling in view of the legislative history and wording of our statutes.

ble, courts will adopt the one which makes the [statute] effective and workable, and not one that leads to difficult and possibly bizarre results.' *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958); see *Milano* v. *Warden,* 166 Conn. 178, 187, 348 A.2d 590 (1974)." *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984). If we were to interpret "natural resources" in § 22a-19 to include agricultural land we would potentially be requiring the consideration of alternatives pursuant to § 22a-19 (b) for every subdivision application in the state.[9] We will not presume that the legislature intended such a result.

The plaintiffs attempt to mitigate the negative implications of holding agricultural land to be a natural resource under § 22a-19 by arguing that a decision favorable to them in this case would not stand for the proposition that § 22a-19 (b) would be applicable in all subdivision proceedings, but rather, only in those involving prime agricultural land. What the plaintiffs have overlooked, however, is that whether land is prime agricultural land is a question of fact because neither the legislature, nor any other state agency, has mapped out and designated certain areas of the state as "agricultural land."[10] Accordingly, if we were to adopt

[9] Air and water are natural resources that are not, generally speaking, "owned" by anyone. Land, however, in most instances, is privately owned. If the legislature had intended to make the inroads on private property rights advocated by the plaintiffs, we believe it would have done so with particularity.

[10] The plaintiffs claim that only 12 percent of the state's land is agricultural. The plaintiffs' 12 percent figure, however, is based on data compiled by the Soil Conservation Service. In the present case the TPZ did not make a finding of fact that the land in question was "agricultural land." Although the plaintiffs submitted numerous documents that classify the Red Hill land as agricultural land, the acceptance or rejection of testimony and the weight to be given evidence is a matter for the factfinder. *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 129, 239 A.2d 519 (1968). The mere existence of the plaintiffs' documents does not necessarily make

the plaintiffs' argument, it would be possible for any person or group to claim that § 22a-19 (b) applies to any subdivision proceeding or judicial review thereof in which agricultural land may possibly be destroyed thereby requiring the factfinder to take evidence and determine whether such land is indeed involved. Further, in making its factual finding, the planning commission or court would probably be obliged to apply General Statutes § 22-3 (b) or § 22-26bb (a), which are the only statutory definitions of agricultural land existing to date. The sections are similar and § 22a-3 (b) states that agricultural land is "any land in the state suitable with reference to soil types, existing and past use of such land for agricultural purposes and other relevant factors, for the cultivation of plants, for the production of human food and fiber or other useful and valuable plant products and for the production of animals, livestock and poultry useful to man and the environment and may include adjacent pastures, wooded land, natural drainage areas and other adjacent open areas."[11] This definition is so broad that it could arguably include almost any land and would do little to narrow the negative implications of a holding that agricultural land is a natural resource within the meaning of § 22a-19.

Since the legislature did not specifically provide for the protection of agricultural land in § 22a-19 or any

their contents indisputable. Id.; see also *Lashgari* v. *Lashgari*, 197 Conn. 189, 190–91 n.1, 496 A.2d 491 (1985); *Grunschlag* v. *Ethel Walker School, Inc.*, 189 Conn. 316, 320, 455 A. 2d 1332 (1983) (" '[a] reference made merely in the "statement of facts" in the brief, without support in the finding [in the trial court's memorandum of decision], does not constitute a fact in the case' "). Accordingly, even if we were to hold that agricultural land is a natural resource under General Statutes § 22a-19, the case would have to be remanded for a factual finding as to whether the land in question in this case is "agricultural land."

[11] Farmland is defined even more broadly in General Statutes § 12-107b (a) as "any tract or tracts of land, including woodland and wasteland, constituting a farm unit."

other section of the EPA, and its inclusion in the term "natural resources" could lead to wide reaching and very likely unintended results, we conclude that such land is not a natural resource protected under that act. The TPZ, therefore, was not obliged to comply with § 22a-19 (b) by considering alternatives to the subdivision application submitted by the corporation.

The only remaining claim in the present case is made by the coalition, Steffens and Fitzgerald.[12] They contend that the trial court erred in concluding that their due process rights were not violated when the TPZ allegedly received additional evidence after the close of the public hearings. It is not necessary to address this issue on appeal because it is rendered moot by our holding that the plaintiffs had no right to invoke the application of § 22a-19 (b) with respect to agricultural land. An examination of the appeal petition filed by the coalition, Steffens and Fitzgerald reveals that they were contesting the TPZ's approval of the corporation's subdivision application only because they allegedly feared the possible destruction of prime agricultural land. They articulated no other arguments. Therefore a reversal of the trial court's decision that the TPZ's action did not constitute a due process violation would serve no useful purpose because the coalition, Steffens and Fitzgerald have no viable underlying claim.[13]

There is no error.

In this opinion the other justices concurred.

---

[12] The CFE did not raise the due process issue on appeal.

[13] Although we decline to address the due process claim, we agree with the trial court that the facts in the instant case do not substantiate this claim and that, even if there were a violation, the coalition, Steffens and Fitzgerald suffered no prejudice.