[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
On March 19, 1991, defendant Rosario S. Mangiafico, Trustee (hereinafter "applicant") filed an application with the defendant Town Plan and Zoning Commission (hereinafter "Commission") for a subdivision of a 106 acre parcel.
A hearing was held on the application on April 2, 1991, it was continued to May 7, 1991, and concluded on May 21, 1991. Plaintiff Fund for Animals (hereinafter "Fund") presented evidence at both the May 7, 1991 and May 21, 1991 hearings. CT Page 1198 This evidence was in support of plaintiff's claim that the proposed site included the critical habitat of the Timber rattlesnake. The final plan contains 27 housing lots and 46.2 acres of open space. The Commission approved the application by a vote of 4 to 1. The appeal was filed on June 12, 1991.
AGGRIEVEMENT
There are two plaintiff appellants in this action. Plaintiff Susan Chapman's affidavit of aggrievement was entered into the record at the hearing of November 5, 1992. Attached to the affidavit was a map of the proposed subdivision. By agreement the plaintiff Susan Chapman was allowed to mark where her residence is located. This court finds that based upon the affidavit and the attached map that the plaintiff Susan Chapman is an abutter of the property and statutorily aggrieved in accordance with Conn. Gen. Stats. 8-8(1).
INTERVENTION BY PLAINTIFF FUND FOR ANIMALS, INC.
At the hearing a copy of the intervention petition of Fund for Animals, Inc.[1] was made part of the record by agreement. The petition was filed pursuant to Conn. Gen. Stats. 22a-19. In its petition the "Fund" alleged many procedural infirmities surrounding the approval of the application by the Planning and Zoning Commission. However its primary thrust is in its perceived duty to protect the public trust by advocating on behalf of the natural resources of the State of Connecticut which includes the Timber rattlesnake.
 PLAINTIFFS HAVE STANDING TO RAISE ENVIRONMENTAL ISSUES BEFORE THIS COURT
General Statutes 22a-19(a) provides that "[i]n any administrative . . . proceeding; . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."
Here plaintiffs raise the issue that the actions of the commission are contrary to their public trust in that the approved development will destroy the habitat of a natural CT Page 1199 resource, to wit: the Timber rattlesnake. Our Supreme Court in Red Hill Coalition v. Town Plan and Zoning Commission, 212 Conn. 727
(1990) firmly establishes that the plaintiffs have standing to assert their claims.
 THE COMMISSION DID NOT MAKE ITS DECISION PRIOR TO THE CONCLUSION OF THE PUBLIC HEARINGS
At the hearing of May 7, 1991 the plaintiff Fund was allowed to intervene and one of its experts spoke to the commission. Based upon that testimony the commission felt a need for more clarification and continued the hearing until May 21, 1991. For each of these hearings the commission was given a prepared motion by the staff. Based upon the prepared motions it is the plaintiffs' contention that the commission had already made up its mind prior to the hearings and the holding of the hearings were mere statutory acts of no significance. AS such, the plaintiff claims that the commission's acts are illegal and arbitrary and should be voided by this court.
The court has reviewed the documents in the record and finds nothing that indicates predetermination of the issues before the commission. The May 7, 1991 motion consists primarily of technical data that is necessary to provide the commission with exactitude in language and description if the motion was to be offered. The proposed motion covers areas that were subjects of prior correspondence with the various state and local agencies in and around the process. The May 21st proposed motion shows some additional information that can be found to be related to the new information heard at the prior public hearing and discussed among the board members. A proposed motion prepared by staff by itself is not indicative of predetermination of the board's position. Here, the commission not only listened once but felt the need to continue for a second hearing to hear more. It is the court's finding that the hearings played their proper and meaningful role in determining the issues before the commission.
 THE COMMISSION DID NOT ALLOW IMPROPER TESTIMONY AFTER CLOSING THE PUBLIC PORTION OF THE HEARING
Our Connecticut Supreme Court has consistently held that a planning and zoning commission may not receive evidence after the close of a public hearing. Holt-Lock, Inc. v. Zoning and Planning Commission of the Town of Granby, 161 Conn. 182, CT Page 1200286 A.2d 299, 301 (1971), citing Parish of St. Andrew's Protestant Episcopal Church v. Zoning Board of Appeals, 155 Conn. 350, 358,232 A.2d 916, 921 (1967). Accord, Shaffer v. Planning and Zoning Commission, 39 Conn. Sup. 306, 464 A.2d 61, 63 (App. Sess. 1983) (Bieluch, J.): "The Commission cannot receive evidence after the public hearing without providing . . procedural safeguards." These safeguards include an opportunity to cross-examine, inspect, explain or rebut evidence and to know the facts on which the agency is asked to act. Cf. Connecticut Fund for the Environment, Inc. v. Stamford, 192 Conn. 247,470 A.2d 1214 (1984).
Here the plaintiff claims the commission allowed further comment by the applicant after the close of the public hearing portion of the meeting. In reviewing the verbatim transcript of the 21 May 1992 hearing provided by the plaintiff, this court finds that the chairman closed the public hearing and began "commission discussions."
The first of many questions by the commission during the discussions were directed to the plaintiff's expert; in fact much of the subsequent discussion of the commission was monopolized by the rattlesnake issues. Questions of law were also directed to counsel for the plaintiffs during the same period of time. Admittedly the applicant did speak but as with the others, he was responding to an inquiry of the commission. While the testimony portion of the public hearing may have been closed the discussion portion included a series of questions that affected both sides, with the plaintiff getting a larger share of discussion time. The record shows that both sides remained in attendance throughout the entire process. This court finds no evidence of exclusion of either sides input, no restriction on either parties ability to explain or rebut statements of the other side during this discussion time period.
 THE COURT FINDS THAT THE DOCUMENTS FILED BY THE DEFENDANT ARE SUFFICIENT TO PROVIDE SUBJECT MATTER JURISDICTION UNDER CONN. GEN. STATS. 8-7c
Conn. Gen. Stats. 8-7c states:
 Any person who makes an application to a planning commission, zoning commission or zoning board of appeals pertaining to real property, the record title to which is held by a trustee of an undisclosed CT Page 1201 trust, shall file with said application a sworn statement disclosing the name of the equitable owner of such real property or the beneficiary of the trust.
It is the plaintiffs' contention that the application acted upon by the defendant was not made by the owner of the property and it was absent a sworn disclosure by the true owner. The plaintiff argues that since the language of the statute utilizes the mandatory command language of "shall" the application clearly failed to comply with the statutory requisites and the actions of the commission are void and the appeal must be sustained citing D.S. Associates v. P Z Commission, 27 Conn. App. 508,510-512 (1992).
In reviewing the application for subdivision approval it lists Rosario S. Mangiafico, Trustee, as the name of owner. Further the applicant admits that the record owner of the property was namely James R. Ripper who received the property from a Land Trust Agreement as trustee for the Mangiafico Development Corporation profit sharing plan.[2]
In reviewing the trustee document it shows that the sole beneficiary of the trust is Mangiafico Development Corporation Profit Sharing Plan. Furthermore, the affidavit shows that Rosario Mangiafico is the President and sole owner of Mangiafico Development Corporation and the sole trustee of the Mangiafico Development Corporation Profit Sharing Plan.
As established in Lauer v. Zoning Commission, 220 Conn. 455
(1991) our Supreme Court now requires a review be undertaken of the legislative purpose of the act. The purpose of the act is to assure that the identities of the beneficial owners of the property are known to the commission in order to avoid hidden conflicts of interest with commission members. See Testimony of Representative Miller, 14 H.R. Proc. Pt. 8, 1971 Sess. pp. 3666-3667.
The record shows that the applicant is the sole beneficiary trustee of the land by virtue of the Land Purchase Agreement. Mr. Mangiafico is also the sole owner of the corporation that established the profit sharing plan that set up the trust agreement of the Land Purchase Agreement. He is the sole beneficiary of the trust too. Further, the record shows no other interest in the land unaccounted for and certainly all of CT Page 1202 the parties acted in accordance with the fact that Rosario Mangiafico was the controlling owner of the land. For over a period of five years the commission, plus numerous other local and state agencies have known that the defendant owned or at least controlled the property. It is this court's finding that the commission did have subject matter jurisdiction.[3]
 THE COMMISSION'S FAILURE TO PROVIDE OFFICIAL NOTICE TO THE TOWN CLERK OF MARLBOROUGH WAS INADVERTENT AND DOES NOT DEPRIVE THE COURT OF SUBJECT MATTER JURISDICTION
The facts show that the Town of Marlborough is within 500 feet of the property in question, and they were not notified by the commission of the pending application. Recently the Supreme Court in Lauer v. Zoning Commission, 220 Conn. 455 (1991) addressed the same issue, finding that the failure to provide notice to the town is not a jurisdictional defect and that the abutting town must raise the issue. This court adopts the Lauer findings that the commission did have jurisdiction, without the proper notice given, and that the plaintiff has no standing to raise the issue before this court.
LOTS 23, 24, 25 MEET FRONTAGE AND VARIANCE REQUIREMENTS; LOTS 23, 24, 25, 26 MEET MINIMUM SQUARE FOOTAGE REAR LOT REQUIREMENTS
The plaintiff complains that Lots 23, 24, and 25 fail to meet frontage and right of way requirements. The record shows that the lots were given variance so the requirements were waived. The plaintiff also claims that Lots 23, 24, 25, and 26 do not meet rear lot footage requirements. In examining the records and the plans themselves, this court finds that the requirements have been met.
 THE TIMBER RATTLESNAKE "CROTALUS HORRIDUS" IS NOT A NATURAL RESOURCE
The thrust of the plaintiff's appeal centers upon the argument that the Timber rattlesnake should be found to be a natural resource by this court in accordance with Conn. Gen. Stat. 22a-19.
A description of the Timber rattlesnake provided by the plaintiff states:
Crotalus horridus horridus Timber Rattlesnake CT Page 1203
Declining. Once widespread and numerous, the Timber Rattlesnake has been completely extirpated in many areas of the Northeast. Its present distribution in Connecticut is extremely restricted, occurring in only a few localized areas in the central and northwestern parts of the state. Human disturbances have contributed significantly to its decline and rarity. Its preferred habitat is mostly heavily wooded upland areas with south-facing rocky ledges, although individuals will migrate to lower ground during dry periods. Contrary to widely held opinion, it is a rather shy and retiring snake. (emphasis supplied)
The record shows that the Timber rattlesnake has already made the list of endangered reptile species in accordance with26-306-1 of the Regulation of Conn. State Agencies. Without question the subdivision sits within the typical foraging habitat of the snake. The Town of Glastonbury has the last sizable population in Eastern Connecticut and one of the last habitats in New England. The species is also considered endangered in the states of New Jersey, New York, Massachusetts and Rhode Island.
Complicating the snakes effort to survive is the fact that female rattlers do not begin to reproduce until about 7 or 8 years old, and that once it reproduces it usually skips two years between litters. When born the young snakes are picked off by their natural predators such as owls, hawks and other snakes which thins their population. Another factor is that studies show that the young snakes imprint on the place they are born and if moved to another area their mortality rate is almost 100%
In analyzing the record the point that is definitely clear is that the subdivision will have an impact upon the snake population because it will inexorably lead to further human/snake contact, and as one of the experts testified to "the chances are the snake will be killed by an irate person who wasn't told that rattlesnakes were there."
In finding that the Timber rattlesnake is not a natural resource under Conn. Gen. Stat. 22-19 the factors discussed by our Supreme Court in Red Hill, supra, are controlling: (i) endangered species are not referred to in the statute; (ii) the legislative history fails to show any intent to include CT Page 1204 endangered or protected species in the term natural resources, (iii) endangered species are mentioned in its own section with specific avenues of relief in Sections 26-203 to 26-315.[4]
Although the preservation of all species of the earth is a goal we should all subscribe to, our legislators have chosen an alternative means to accomplish that purpose when it comes to endangered species. This court finds that the Timber rattlesnake is not a "natural resource" as defined by Conn. Gen. Stats. 22a-19.
 THE GLASTONBURY P Z DECISION WAS REASONABLE AND NOT ARBITRARY, CAPRICIOUS OR ILLEGAL
Consistently our courts have held that a decision of a municipal land-use commission may not be disturbed unless the party challenging the decision establishes that the commission acted unreasonably, arbitrarily, or illegally. See, e.g., Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152
(1988); Frito-Lay, Inc. v. Planning and Zoning Commission,206 Conn. 554, 572-573 (1988). The principle was well summarized by the court in the Frito-Lay case as follows:
 The trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers. The court must invest such broad discretion in these authorities when determining the public need and the manner of meeting it, because they are closest to the circumstances and conditions which "create the problem and shape the solution." Stiles v. Town Council, 159 Conn. 212, 219 (1970). Thus, the court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion.
The courts have also held that a "municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency . . . ." Reed v. Planning 
Zoning Commission, 208 Conn. 431, 433 (1988); Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370, 374
(1990). "The planning commission, acting in its administrative capacity . . ., has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Id. CT Page 1205
The actions of the commission show a typical exchange of positions representing natural compromises between the commission and the applicant. Most prominent is the final decision to build 27 units when 52 were originally proposed. The commission has required and preserved more than 40% of the subdivision as open space or conservation easement areas.
At the hearing plaintiff's counsel when questioned by the court as to what relief he felt was proper, enunciated two positions. First, that no homes be allowed to be built in the area or secondly only twelve units be built. He justified the twelve units by indicating that they would be built in areas away from the southern portion of the property, a place where the rattler is very prominent. In considering the plaintiff's position, the court has to factor in that the rattler has a foraging area of about 2 1/2 miles from the development.
Because of the snakes foraging distances the relief plaintiff requests either the zero unit or twelve unit proposal impacts overbroadly upon this development.
The minutes of the two hearings show a commission concerned with the nature of the area to be built and specifically with finding ways to preclude human/snake interactions that will result in the snake's death.[5] This court finds that the commission's actions are within the law and that they found a series of feasible and prudent alternatives to address the problem. In its final act of approval the Commission noted that its open space plan was specifically adopted in consideration for a) The preservation of wildlife habitat;
b) Reduction of human/rattlesnake encounters;
c) Preservation of the natural ridge feature;
The Appeal is dismissed.
NORKO, J.