EDMOND BOOKER, Plaintiff-Appellee, v. DESIREE GLAPION ROGERS, Director of the Illinois State Lottery, *et al.,* Defendants-Appellants.

Third District    No. 3—93—0135

Opinion filed February 2, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Rita M. Novak, Assistant Attorney General, of counsel), for appellants.

Robert L. Silberstein, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The defendants, the Department of the Lottery and Desiree Rogers, the Director of the Illinois State Lottery, appeal from a summary judgment entered in favor of the plaintiff, Edmond Booker. The record contains no transcript of the hearings before the circuit court; therefore, the facts presented are those gleaned from the cross-motions for summary judgment and the other pleadings found in the common law record.

The record shows the plaintiff purchased a Lotto ticket on July 7, 1990. There was a drawing that evening and the six winning numbers selected matched those on one of the plays on the plaintiff's ticket. The total amount of the Lotto grand prize that evening was $5,448,852.

On July 11, 1990, the plaintiff presented his winning ticket for validation. According to the plaintiff, he was subsequently informed that there was a second ticket sold which contained the six winning numbers. He was therefore told he was only entitled to one-half of

the grand prize. The defendants commenced paying the plaintiff $2,724,426 in installments as provided by the lottery's rules and regulations. The plaintiff maintained in his pleadings that at the time he presented his winning ticket he was not told that a second winning ticket existed.

The record shows the second winning ticket was not redeemed within one year of the drawing. On August 1, 1991, the plaintiff filed a "Complaint for Preliminary Injunction and Temporary Restraining Order" stating that he was entitled to the other half of the Lotto grand prize drawn on July 7, 1990. He further stated that he intended to pursue available administrative remedies and requested a temporary restraining order (TRO) to prevent the defendants from doing anything with the $2.7 million representing the other one-half of the July 7, 1990, Lotto prize. The circuit court granted the TRO, and following a hearing on August 9, 1991, the court granted a preliminary injunction.

On September 4, 1991, the plaintiff filed a "Complaint under Administrative Review." In the complaint, the plaintiff alleged he sent a request to a representative of the Illinois State Lottery, requesting a hearing, and that on August 20, 1991, the "Illinois Lottery Board" denied his request for a hearing. He requested a hearing on his entitlement to the $2.7 million and a judgment in that amount. Attached to the complaint was a letter dated August 20, 1991, from Assistant Attorney General David Bo Mattson. The letter stated that the request for a hearing had been denied by the "Illinois State Lottery," and that no "administrative process" was available to the plaintiff because the relevant claim period expired one year after the July 7, 1990, Lotto drawing.

On September 18, 1991, the Attorney General filed a special and limited appearance contesting the jurisdiction of the circuit court. On October 9, 1991, the plaintiff's preliminary injunction action and the administrative review claim were consolidated in a single cause.

On April 20, 1992, the circuit court denied the motion for a special and limited appearance, and denied the defendants' motion to dismiss. The plaintiff's motion to add the Lottery Control Board as a defendant was granted. The court also granted the plaintiff's motion to add count II to his administrative review claim. Count II was premised on section 13 of the Illinois Lottery Law (20 ILCS 1605/13 (West 1992)). The record shows the defendants subsequently filed a second motion to dismiss which was denied.

The plaintiff filed a motion for summary judgment, claiming there were no genuine issues of material fact and that he was entitled to judgment as a matter of law. For purposes of the summary judgment

motion, the plaintiff conceded that two winning tickets were issued which contained the winning numbers. The defendants filed a cross-motion for summary judgment.

On November 13, 1992, the circuit court entered an order denying the plaintiff's motion for summary judgment. The court allowed the plaintiff time to respond to the defendants' motion for summary judgment. In addition to filing a response, the plaintiff asked the court to reconsider the denial of his motion for summary judgment.

On January 19, 1993, following a hearing, the circuit court granted the plaintiff's motion to reconsider, granted the plaintiff's motion for summary judgment and entered a judgment in favor of the plaintiff in the amount of $2,724,426 to be "paid pursuant to contract." The defendants bring the instant appeal. The plaintiff has filed a motion requesting leave of this court to amend the pleadings to add a third count requesting an order of *mandamus* issue against the defendants. We have taken this motion with the case.

On appeal, the defendants contend the circuit court erred in granting the plaintiff summary judgment because, as a matter of law, the plaintiff is not entitled to the unclaimed one-half of the July 7, 1990, Lotto grand prize. The defendants assert that under the law the unclaimed prize money was to be returned to the prize pool to fund subsequent special lottery drawings.

Section 7.1 of the Illinois Lottery Law (the Act) provides that the Department of the Lottery (the Department) "shall promulgate such rules and regulations governing the establishment and operation of a State lottery as it deems necessary to carry out the purposes of this Act." (20 ILCS 1605/7.1 (West 1992).) The Lotto is a pari-mutuel game. (See Rule K of the Game Rules and Regulations, Lotto 6 of 54.) Section 1770.190(g) of the Illinois Administrative Code provides in part: "Prize structures for parimutuel [*sic*] games offered by the Department will be established by game rule. With respect to each such game, the prize pool for each level of prize offered per drawing will be expressed as a percentage of total ticket sales for the drawing. The Grand Prize pool will be divided by the number of Grand Prize winners to determine the amount of cash available per winner." (11 Ill. Adm. Code § 1770.190(g) (1992).) Rule L(b) of the Game Rules and Regulations, Lotto 6 of 54, provides, "Prize money allocated to the Grand Prize Category will be divided equally by the number of plays on Standard Game Tickets winning a Grand Prize." Rule L(b) of the Game Rules and Regulations, Lotto 6 of 54.

Section 1770.130(a) provides: "No claim for a game prize with respect to any Lottery game shall be honored, and no prize shall be paid with respect to any such claim, unless the claim is accompanied

by a valid winning ticket for the game and the prize. Each winning ticket must pass such validation and security tests as the Department may require to validate the ticket." 11 Ill. Adm. Code § 1770.130(a) (1992).

Prior to July 1, 1992, the Act provided in pertinent part: "If no claim is made for the money within the established claim period, the prize *shall* be included in the prize pool of such special drawing or drawings as the Department may, from time to time, designate ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 120, par. 1169.) According to the Attorney General's brief, the Act was amended effective July 1, 1992, by replacing the word "shall" in the preceding quote with the term "may" in order to allow the unclaimed funds to be transferred to the Common School Fund. This amendment has no bearing on the issue before us. In addition, Rule M provides, "All prize money on winning Lotto tickets may be retained by the Director for payment to the person entitled thereto. In the event no claim or redemption is made within one (1) year of the drawing date on the ticket, the prize money shall be paid out of the State Lottery Fund in the form of prizes, as provided by game rules or directive." Rule M of the Game Rules and Regulations, Lotto 6 of 54.

Summary judgment is an extraordinary measure which should only be granted when the movant's right to judgment is clear and free from doubt as a matter of law. (*Johnston v. Tri-City Blacktop, Inc.* (1991), 217 Ill. App. 3d 388, 577 N.E.2d 529.) On appeal from a grant of summary judgment, a reviewing court's function is to determine whether the trial court properly concluded that there was no genuine issue of material fact, and if there was not, whether the judgment was correct as a matter of law. *People ex rel. Burris v. Memorial Consultants, Inc.* (1992), 224 Ill. App. 3d 653, 587 N.E.2d 34.

In the instant case, there is no genuine issue of material fact in dispute. The question is whether on the facts presented the plaintiff was entitled to judgment as a matter of law. We find, after reviewing the statute, rules and regulations, that he was not and that the circuit court erred in granting him summary judgment.

The gist of the plaintiff's argument in support of the circuit court's ruling is that he was the only "winner" of the July 7, 1990, grand prize. The plaintiff contends that in order to be a "winner" of the grand prize, a ticket holder must not only have a ticket containing the winning numbers, but must also properly present the ticket and have it validated. In support of this supposition, the plaintiff principally relies on Rule L(b), which states, "Prize money allocated to the Grand Prize Category will be divided equally by the number of plays on Standard Game Tickets winning a Grand Prize." Rule L(b) of the Game Rules and Regulations, Lotto 6 of 54.

The plaintiff asserts that since the other ticket holder in this case did not present his or her claim and have the second ticket validated, that ticket holder did not "win" the grand prize. According to the plaintiff's theory, the second ticket holder had only an "expectancy, contingency and possibility for a share of the Grand Prize." The failure to present the second ticket and have it validated converted the plaintiff's ticket into the one ticket winning the grand prize for the July 7, 1990, Lotto game.

The contention is unpersuasive. The number of winning tickets containing the six winning numbers is determined within a relatively short time of the drawing. At that point, the portion of the grand prize each winning ticket holder is entitled to is determined. They are winners of the grand prize from the moment their numbers are selected. The only remaining question is whether the ticket holder will claim his or her share of the grand prize. The number of "winners" and the portion of their share of the prize money is not subject to change thereafter and is not dependent on whether claims are actually made. Adoption of the plaintiff's argument would create an unworkable and haphazard method for determining the share of the prize money each winning ticket holder is entitled to claim. Thus, we find no merit to the plaintiff's argument that he was the only winner of the grand prize.

In summary, the plaintiff purchased a Lotto ticket for the July 7, 1990, drawing. He won when the six numbers drawn matched those on one of the plays on his ticket. Four days later he presented his winning ticket for payment. A second ticket sold for the drawing also contained the winning numbers. Thus, each ticket holder was entitled to one-half of the grand prize of $5,448,852. The defendants commenced paying to the plaintiff the one-half of the grand prize he was entitled to receive. One year later, on July 7, 1991, the claim period on the second ticket expired with no one presenting the winning ticket. Under the law, this unclaimed prize money was to be transferred to the prize pool to fund future lottery drawings. The plaintiff had no right to this money at any point in time—not on the day he won, nor on the day the claim period expired on the second ticket. There is no legal basis for awarding the plaintiff this unclaimed prize money.

In light of our ruling on the above issue, we deny the plaintiff's motion to amend his complaint.

For the foregoing reasons, we find the trial court should have entered summary judgment in favor of the defendants. Accordingly, the judgment of the circuit court of Peoria County is reversed and judgment is entered in favor of the defendants.

610

Reversed and judgment entered.

McCUSKEY and BRESLIN, JJ., concur.