[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The issue at the heart of this case and the motion before the court is whether the plaintiff Clarence Jackson's (Jackson) failure to present his winning Connecticut Lotto ticket to the defendant Connecticut Lottery Corporation (CLC) within one year of the drawing date, as required by § 12-568-5(c)(2)(B) of the Regulations of Connecticut State Agencies, bars his claim for the prize. The court finds that compliance with Reg. §12-568-5(c)(2)(B) is a material term of the contract formed between the parties by the purchase of the Lotto ticket, that Jackson's failure to satisfy that term entitles CLC to judgment as a matter of law and grants the defendant's motion for summary judgment.
 FACTS
The facts underlying this case are essentially undisputed and set forth in one or both of the affidavits (with exhibits) filed by the parties in connection with this motion. On or before October 13, 1995, the plaintiff, Clarence Jackson, purchased a Connecticut Lotto "Quick Pick" ticket for the drawing of October 13, 1995. On the face of the plaintiff's Lotto ticket are multiple six-number combinations. On the back of the ticket are various provisions, including the admonition that "Prize must be claimed within one year from drawing date. Determination of winners subject to DOSR rules and regulations." Also on the back of the ticket are instructions that the prize can be claimed by presentment "to any on-line agent" or "Lottery Claims" in Newington. CT Page 10168
The plaintiff purchased the ticket from the Snack Plus convenience store located in Hamden, Connecticut. On the date of the purchase, Snack Plus was a licensed agent of the State of Connecticut, and authorized to sell Lotto tickets.
On October 13, 1995, the winning six-number combination was drawn and announced. One of the six-number combinations on the plaintiff's Lotto ticket matches the six-number combination drawn on that date.
On October 13, 1996, the Sunday anniversary of the drawing, 1,495 lottery terminals were on-line until midnight, at sales agent locations around Connecticut. But Jackson did not present his ticket until Wednesday, October 16, 1996, at the Connecticut Lottery Claims center located in Newington, Connecticut. The defendant denied Jackson's claim because the one year presentation period had expired.
By his one count complaint dated September 22, 1997, the plaintiff alleges, inter alia, that the plaintiff's purchase of the Lotto ticket created a contract between himself, and the State of Connecticut.[1] Specifically, the plaintiff claims that "in the event that any of the six-number combinations which appeared on said ticket matched those drawn on October 13, 1995, the State of Connecticut would pay the claimant the jackpot . . . over a twenty-year period." (Plaintiff's Complaint p. 1.) The plaintiff then alleges that the defendant "breached its obligations under the contract with the [p]laintiff by refusing to honor the ticket presented by the [p]laintiff." (Plaintiff's Complaint p. 2.)
CLC in its Answer dated February 2, 1998, denied breaching the contract. By way of Special Defense, it raises Jackson' s failure to comply with Regulation § 12-568-5 (c) (2)(B) by not presenting his ticket within one year of the drawing.
By motion dated March 2, 1998, the CLC moved for a summary judgment for defendant on the basis that Jackson's failure to comply with the regulation requiring the presentation of the ticket within the one year period barred his claim. Oral argument was had in May, 1998. Each party also made written argument by initial and reply briefs, the last of them dated May 7, 1998.
 The Parties' Positions CT Page 10169
The defendant argues, inter alia, that the plaintiff's claim must fail as a matter of law, because Jackson did not present the Lotto ticket within one year of the drawing date as required by § 12-568-5 (c)(2)(B) of the Regulations of Connecticut State Agencies.[2] The defendant argues that the existing law, including regulations, becomes a part of a contract when made, and therefore the one year limitation was incorporated when the plaintiff's purchase of the Lotto ticket formed a contract between the parties. Since there is no dispute that the plaintiff presented his ticket three days beyond the one year drawing date the defendant argues it is therefore under no duty to pay the plaintiff the prize money.
The plaintiff argues, inter alia, in opposition to the defendant's motion for summary judgment that "a dispute remains as to whether or not the one-year deadline and validation procedure was part of the contract . . ." (Plaintiff's Memorandum in Opposition p. 2.) Specifically, the plaintiff argues that the one year provision was not incorporated into the contract because the provision was not "known, understood and agreed upon by the parties before the execution of the contract." (Plaintiff's Memorandum in Opposition p. 2.), although the provision is printed on the back of every ticket.
Alternatively, the plaintiff argues that even if the term is incorporated into the contract, the one year provision is not material to the contract.
 The Standard For Summary Judgment
Under Connecticut Practice Book § 17-49 (formerly § 384) summary judgment should be granted if the affidavits and other submitted documents demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). The genuine issue aspect of summary judgment procedure requires that, prior to trial, the parties provide the court with evidentiary facts, or substantial evidence outside of the pleadings from which the material facts alleged in the pleadings can be inferred. Hammer v. Lumberman's
CT Page 10170Mutual Casualty Co., 214 Conn. 573, 578-79, 573 A.2d 699 (1990);United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378-79, 260 A.2d 596 (1969). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. . .". (Citation omitted; internal quotation marks omitted.) Gabriellev. Hospital of St. Raphael, 33 Conn. App. 378, 382-83,635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994).
 DISCUSSION Is The Lotto Ticket A Contract?
As a threshold issue, the court must first determine whether a contract exists between the parties. It has been generally held that "[a] lottery winner's entitlement to a prize is governed by the principles of contract law." Coleman v. Bureau of StateLottery, 77 Mich. App. 349, 351, 258 N.W.2d 254 (1977); Thao v.Control Date Corp. , 57 Wash. App. 802, 790 P.2d 1239 (1990).
"[I]n order to form a binding contract, there must be an offer and acceptance based on a mutual understanding by the parties." Cavallo v. Lewis, 1 Conn. App. 519, 520, 473 A.2d 338
(1984). Furthermore, "[u]nder the law of contract, a promise is generally not enforceable unless it is supported by consideration. E. Farnsworth, Contracts (1982) 2.9, p. 89; A. Corbin, Contracts (1963) 193, p. 188." Wellington Systems v.Reding Group Inc., 49 Conn. App. 152, 162, (1998). Moreover, "[t]he contract must be definite and certain as to its terms and requirements." Steinberg v. Reding,24 Conn. App. 212, 214, 587 A.2d 180 (1991); Augeri v. C.F. Wooding Co.,173 Conn. 426, 429-30, 378 A.2d 538 (1977).
In the present action, the court finds that the parties did enter into a valid, unilateral contract[3] through the purchase of the Lotto ticket. The defendant offered the plaintiff the chance to win prize money, and the plaintiff accepted that offer through the act of purchasing the Lotto ticket. See Finaly v.Swirskey, 103 Conn. 624, 633, 131 A. 420 (1925).
The contract was supported by consideration. The defendant's consideration was in the form of its promise to pay the plaintiff prize money upon the fulfillment of the conditions of the contract. The plaintiff's act of purchasing the Lotto ticket for one dollar per drawing was sufficient consideration on his part CT Page 10171 to render the contract enforceable. See Jazlowiecki v.Nicoletti, 34 Conn. Sup. 670, 673, 387 A.2d 1081 (1977).
There also was mutual assent to the terms of the contract. "Manifestation of assent to a contract may be made wholly or partly by written or spoken words or by other acts . . . ." (Internal quotation marks omitted.) Krondes v. O'Boy,37 Conn. App. 430, 434, 656 A.2d 692 (1995). "A manifestation of mutual assent may be made even though neither the offer nor acceptance can be identified and even though the moment of formation cannot be determined." (Internal quotation marks omitted.) Sivilla v.Phillips Medical Systems of N. Am., Inc., 46 Conn. App. 699, 709,700 A.2d 1179 (1997). "Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." 3 Restatement (Second), Contracts § 45, comment (a) (1981).
There is no question that the defendant made an offer and a promise to the plaintiff to pay the prize money upon the fulfillment of the conditions of the offer. The defendant accepted and assented through his purchase of the Lotto ticket. Consequently, there was a manifestation of mutual assent between the parties.
 II. The Terms of the Contract
The plaintiff has claimed a material issue of fact as to whether he actually knew of the one year presentment limitation at the time the contract was formed such that it became a mutually agreed term of the contract. But the determinative question is whether the one year limitation provided for in Reg. § 12-568-5 (2)(c)(B) was incorporated into the contract as a matter of law at the time the contract was executed. If the regulation was so incorporated into the contract, the plaintiff's knowledge of the one year limitation is presumed, see Ciarlegliov. Benedict Co., 127 Conn. 291, 293, 16 A.2d 593 (1940) (parties are presumed to know of incorporated statute's terms), and whether the plaintiff claims a lack of actual knowledge of Reg. § 12-568-5 (2)(c)(B) is immaterial.
"Parties are presumed to have bargained with each other on the basis of existing law, including the judicial construction placed on a statute." Williamson v. Massachusetts Bonding Ins.Co., 19 Conn. Sup. 59, 62, 109 A.2d 846, aff'd, 142 Conn. 573,116 A.2d 169 (1954). "There is no dispute that parties contract CT Page 10172 with reference to existing law, except when the contract discloses a contrary intention." Hatcho Corporation v. DellaPietra, 195 Conn. 18, 21, 485 A.2d 1285 (1985) (term included in parties lease agreement defined by statute incorporated into agreement). "Unless the agreement indicates otherwise, a statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein." Id.; Sicaras v. Hartford,44 Conn. App. 771, 782, 692 A.2d 1290, cert. denied, 241 Conn. 916,696 A.2d 340 (1997) (provision of Workers' Compensation Act incorporated into parties agreement as a condition precedent).
Recently, the Connecticut Supreme Court stated that it was "not unmindful that when contracts are limited by statutory provisions, those provisions are generally considered to be incorporated therein as a matter of law." Rizzo Pool Co. v. DelGrosso, 240 Conn. 58, 77 n. 18, 689 A.2d 1097 (1997) (contract subject to Home Improvement Act, and plaintiff's violation of Act rendered contract unenforceable); see also Sanghavi v. PaulRevere Life Ins. Co., 214 Conn. 303, 307, 572 A.2d 307 (1990) (contract provision invalid because it did not conform to statutes and regulations governing insurance contracts); SafecoIns. v. Vetre, 174 Conn. 329, 333, 387 A.2d 539 (1978) (provisions of private contract that conflict with the statutes or regulations give way to the latter); Hopkins v. MatchlessMetal Polish Co., 99 Conn. 457, 460, 121 A. 828 (1923) (provisions of Workers' Compensation Act incorporated into employment contracts).
The plaintiff argues that the law only presumes the incorporation of statutes, and not regulations into contracts. However, recent Connecticut caselaw, other jurisdictions' caselaw and logic indicate otherwise.
In the case of Fullerton v. Dept. of Revenue Services,245 Conn. 601, (1998) our state Supreme Court addressed the claim of lotto winners who held, and timely presented, one of two winning tickets from a drawing. The claimants sought the entire prize because the other winner failed to present his or her ticket. The court held that the unclaimed share of the prize reverted to the next lotto pool, not the sole presenting winner. The court specifically stated: "One who purchases a ticket for an authorized lottery game agrees to abide by the lottery regulations and is bound by the official procedures of that particular game . . . [u]pon a winning ticket holder's failure CT Page 10173 to claim the prize within the applicable claim period, the prize reverts to the prize structure of future games to be distributed to future winners." Fullerton v. Dept. of Revenue Services, supra, 245 Conn. 608-610. The Supreme Court's unequivocal statement regarding the force and effect of the lottery regulations on purchasers of lottery tickets leaves no doubt that the lottery ticket contract included the contents of Reg. §12-568-5 (c)(2)(B).
It is noteworthy that in other jurisdictions, agency regulations have been incorporated into contracts in the same way as statutes, with the parties being presumed to know of the contents of those regulations. Green v. Lehman, 544 F. Sup. 260,263 (D. Maryland, 1982), aff'd, 744 F.2d 1049 (4th Cir. 1984) (valid regulations in existence at execution of contract implied into contract); Rehart v. Clark, 448 F.2d 170, 173 (9th Cir. 1971) (incorporating United States Code and regulations promulgated thereunder into installment agreement); GeneralElectric Company v. Moretz, 270 F.2d 780, 787 (4th Cir. 1959) (under Virginia law, statutes and regulations existing at time incorporated into contract); Alpha Beta Food Markets v. RetailClerks Union, 291 P.2d 433, 437 (Sup.Ct. Cal. 1956) (regulations presumed to have been known and incorporated into contract).
Such an approach is consistent with the accepted principal that validly enacted agency regulations have the same force of law as statutes. "It is well established that an administrative agency's regulations are presumed valid, and unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute." (Internal quotation marks omitted.) Mass. v. United States Fidelity Guaranty Co.,222 Conn. 631, 649, 610 A.2d 1185 (1992); Traveler's Ins. Co. v.Kulla, 216 Conn. 390, 399, 579 A.2d 525 (1990). Where "[t]he legislature has expressly directed [a] commission to adopt . . . regulations . . . the validly enacted regulations of an administrative agency carry the force of statutory law." GriffinHospital v. Commission on Hospitals Health Care, 200 Conn. 489,497, 512 A.2d 199 (1986); Salmon Brook Convalescent Home v.Commission on Hospitals and Health Care, 177 Conn. 356, 363,417 A.2d 358 (1979). The court can see no valid reason for treating the presumption of knowledge of a statute any differently from that of a validly enacted regulation; especially in an area regulated as strictly as a state lottery system.
The court finds that Reg. § 12-568-5 (c)(2)(B) was CT Page 10174 incorporated into, and became a part of, the parties contract when the lotto ticket was sold, regardless of whether Jackson was explicitly aware of it.[4]
 IV. Materiality of Reg. § 12-568-5(c)(2)(B)
The only remaining issue remaining to be determined is whether Reg. § 12-568-5 (c)(2)(B) was a material term to the contract. Where a party seeking to enforce a contract is in material breach, that party will be denied enforcement of the contract. Bernstein v. Nemeyer, 213 Conn. 665, 672-673,570 A.2d 164 (1990).
To determine if a contract term is material, Connecticut utilizes the application of multiple circumstances as set forth in 2 Restatement (Second), Contracts § 241 (1981):
 In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonable expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.
669 Atlantic Street Associates v. Atlantic-Rockland StamfordAssociates, 43 Conn App. 113, 126, 682 A.2d 572, cert denied.239 Conn. 949, 686 A.2d 126 (1996).
These are not set rules, but circumstances to be reviewed in determining if a term is material. 669 Atlantic Street Associatesv. Atlantic-Rockland Stamford Associates, supra, 128; 2 Restatement (Second), Contracts § 241, comment (a) (1981). Under these undisputed facts, criteria (a), (b) and (d) all support the materiality of the one year limitation. Only CT Page 10175 criteria (c) is to the contrary.
The claim that Jackson's failure to claim his prize within a year is not material ignores important consequences to the CLC of Jackson's failure. The one year time limit is tied inflexibly under the detailed regulatory scheme to future drawing prize pools. Regulation § 12-568-5 (p) states in relevant part "if the prize remains unclaimed at the expiration of the appropriate time period . . . such prize shall revert to the prize structure of future lottery games to be distributed to future winners." The plaintiff's position would force CLC to either ignore such provision in the regulations or to pay the same prize twice, in derogation of the regulatory structure.
In this case, the one year deadline expired on a Sunday and Jackson did not present a claim until the next Wednesday. It is common knowledge that the Lotto game drawings are on Tuesdays and Fridays. Jackson did not present his claim until after the prize monies had reverted to the prize structure of the drawing following the one year deadline. CLC can reasonably expect the benefit of any winner claiming his prize within a year. Jackson can not cure his default nor adequately compensate CLC for such a double payment and violation of the regulatory scheme.
While the claim period may on rare occasion work a forfeiture on an individual winner, without it the regulatory scheme of the lottery system would be compromised. Despite the rigidity of the regulation, a one year period for validation is reasonable. "[T]he [commission] has chosen a reasonable period to allow a claimant to present their claims. It is a period of time that is not excessively short nor is the claim process loaded j with Byzantine machinations to become a vested winner. Simple presentment within a year is all that is required." DiGioia v.Division of Special Revenue, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 345340 10 CONN. L. RPTR. 493 (December 8, 1993, Norko, J.).
On the undisputed facts, applying the law, the only reasonable conclusion is that the one year limitation provision is a material term of the lotto contract, and Jackson's failure to present the ticket for validation within one year of the drawing date is a material breach, rendering the contract unenforceable against the CLC. The one year presentment limit is directly related to the payment of the lotto prize, the essence of every lotto contract. The one year limit impacts the ability CT Page 10176 of a purchaser to claim a prize, the need for the CLC to pay a prize for a specific drawing, the length of time for which the CLC must reserve the funds to pay the prize and the time at which the prize will be made available for other purchasers to win at a subsequent drawing. All these issues go to the core of a lottery ticket transaction made within the context of a regulated state lotto game.
Furthermore, the materiality of Reg. § 12-568-5 (c)(2) has already been, in essence, addressed by the Superior Court. See DiGioia v. Division of Special Revenue, supra, Superior Court, Docket No. 345340, 10 CONN. L. RPTR. 493; (presentment of lottery ticket two days after one year limitation invalid). In DiGioia a case decided on facts very similar to the present action, the Connecticut Superior Court, Norko, J., affirmed the decision of the Division of Special Resources[5]
denying the plaintiffs' claim to lottery proceeds. There, the court held that since the plaintiff presented his ticket for validation two days beyond the one year drawing date, the defendant was not obligated to pay the plaintiff the claimed prize money. DiGioia v. Division of Special Revenue, supra, Superior Court, Docket No. 345340. 10 CONN. L. RPTR. 493.[6]
The court, in affirming the Division's decision, stated that the "[p]hysical presentment of the lottery ticket within the regulatory time period is a necessity to be declared a winner."Id.
 DiGioia is not alone in that view. Other jurisdictions have also enforced time limits and other requirements to preclude claimants. See Madara v. Commonwealth of Pennsylvania,323 A.2d 401 (Pa.Commw. 1974) (ticket presented for validation beyond one year from drawing date not enforceable); Ramirez v.Bureau of State Lottery, 186 Mich. App. 275, 463 N.W.2d 245
(1990) (presentment of winning ticket was condition precedent to winning prize, and failure to meet condition deprives claimant of any basis for claiming prize).
These cases and this court's holding that the one year limitation is material, are also consistent with Fullerton v.Dept. of Revenue Services, supra, 608, 610. The Connecticut Supreme Court therein stated that a ticket purchaser is bound by the official procedures of the game for which he purchases a ticket, and explicitly recognized the duty of the CLC to distribute prizes not claimed within the time period to the winners of future drawings. CT Page 10177
The court finds the plaintiff's arguments to the contrary unavailing. In support of his argument, the plaintiff relies upon the decisions of Mihalyak v. Mihalyak, 11 Conn. App. 610,579 A.2d 213 (1987) and Kakalik v. Bernard, 184 Conn. 386,439 A.2d 1016 (1981). Both of the foregoing cases, however, concerned real property or real estate contracts, where the rules governing time limitations and restrictions tend to be more flexible than in other areas of the law, such as this.
The plaintiff's argument that Reg. § 12-568-5(1)(3)(B) allows the executive director to authorize payment despite the plaintiff's failure to comply with the deadline is also unavailing. Reg. § 12-568-5 (1)(3)(A)(B) concerns lost, not untimely, tickets presented for validation. In DiGioia v.Division of Special Revenue, supra, that plaintiff made the identical claim now put forward by this plaintiff, and the court addressed and rejected the argument. Here, as was the case inDiGioia v. Division of Special Revenue, the lottery ticket was not lost, it was only presented for validation beyond the one year deadline. As such, Reg. § 12-568-5 (1)(3)(A)(B) is inapplicable.
 CONCLUSION
The court finds that Section 12-568-5 (c)(2)(B) of the Regulations of Connecticut State Agencies is a material term incorporated into the parties contract. Based upon the undisputed facts, the plaintiff is in clear breach of that term. Jackson's failure to present his Lotto ticket for validation within one year of the drawing date relieves the CLC, as a matter of law, of any obligation to pay Jackson the prize money. Accordingly, the CLC's motion for summary judgment is granted.
James T. Graham Superior Court Judge