[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CONNECTICUT LOTTERY CORPORATION'S MOTION FOR SUMMARY JUDGMENT (#131) 
This is a class action in which the members of the class claim to hold winning instant game tickets in a Connecticut lottery game known as "8-ball." The members of the plaintiff. class hold tickets bearing the symbol*, but the caption beneath the symbol spells the word "six" or "nine" (symbol caption) This discrepancy resulted from an over-spray that occurred during the printing of the 8-ball game tickets, causing the*
or* symbol to resemble the symbol* on some tickets. The plaintiffs and other players presenting the misprinted tickets to the CLC CT Page 16119 were denied their expected prize. These plaintiffs claim that they are winners because their tickets bear the* symbol.
The defendant is the Connecticut Lottery Corporation (CLC), created pursuant to Connecticut General Statutes § 12-800 et seq. The CLC is charged with the operation and management of the Connecticut State Lottery (Lottery) under the regulatory oversight of the Department of Revenue Services, Division of Special Revenue (DRS)
The CLC has filed a motion for summary judgment[1] on the grounds that none of the plaintiffs holds a winning ticket and therefore all of their claims must fail as a matter of law. The CLC contends that in order for a player to be a winner, each symbol on the 8-ball ticket must agree with its symbol caption, and the plaintiffs' tickets all fail to satisfy this basic validation, requirement. The CLC further contends that those plaintiffs who did not present their claims to the CLC within one year of the end of the 8-ball game are precluded as a matter of law from maintaining an action against this defendant. Finally, the misrepresentation claims asserted in the Gawitt and Shea actions must fail, according to the CLC, because there is no evidence to support the alleged misrepresentation.
The plaintiffs oppose the CLC's motion for summary judgment and move for summary judgment in their own favor on the grounds that the CLC's official rules pertaining to the 8-ball game and their rules of operation were never published and do not apply to the game, the official rules were never presented to nor adopted by the board of directors, the terms on the back of the ticket are not part of the contract, the only terms applying to the game are on the face of the game ticket, the tickets do not require the game symbol to match the symbol caption, and the filing of their complaint presents a timely claim.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.) Appleton v. Boardof Education, 254 Conn. 205, ___ A.2d ___ (2000). "A material fact is a fact that will make a difference in the result of the case. . . .The facts at issue are those alleged in the pleadings." (Citations omitted; CT Page 16120 internal quotation marks omitted.) Mountaindale Condominium Assn. v.Zappone, 59 Conn. App. 311, ___ A.2d ___ (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist."Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988)
The legally operative and dispositive facts in this case are as follows:
On September 12, 1997, the CLC executed and adopted official procedures and working papers for the instant lottery game known as 8-ball. The official procedures were reviewed and approved by DRS. The official procedures set forth, among other things, the design and layout of the tickets, the prize structure of the game (including specification of font size), the official procedures and rules governing the game, and details specifications
In the 8-ball game, each game symbol is designed and manufactured to include both a numerical and associated matching caption. Thus, for example, the game symbol for the number eight includes both the numeral "8" and the caption "eight." This redundant identification design is common to virtually all instant ticket games and is intended to guard against production errors and fraud.
The reverse side of each 8-ball ticket includes the statement: "Lottery Rules/Regulations/official Procedures Apply." Exhibit 3 attached to CLC's motion for summary judgment. The official procedures state that in order to qualify as a winner in the Connecticut instant lottery game, each symbol must agree with its caption. Exhibit 3, p. 12, attached to CLC's motion for summary judgment. This validation requirement applies to all Connecticut instant lottery games, and has been in effect since the inception of Connecticut instant games in 1995.
The CLC on December 10, 1997, published legal notices in the New Haven Register and the Hartford Courant advising the public that the CLC had adopted procedures governing operations of the 8-ball game to become effective on December 12, 1997, and further stating that said procedures would be available at the CLC's offices to any party requesting a copy. Exhibit 4 attached to CLC's motion for summary judgment.
Tickets for the 8-ball game were produced for the CLC by Creative Games International, Inc. (CGI) in November, 1997. The tickets were printed in the presence of a DRS security representative. The 8-ball tickets produced for the CLC by CGI were created by computer-generated fonts representing both a numeral and a matching caption as one unit. The numerals and matching captions for each game symbol and prize symbol are CT Page 16121 inseparable. The printing software, known as generation tape, imposed a particular font (symbol) from the computer file to be printed, automatically producing both the numeral and matching symbol caption as one unit. A numeric symbol automatically was paired with a matching symbol caption, making it impossible for a symbol to be printed with a mismatched symbol caption.
Following the production of the 8-ball tickets, an independent audit was performed by the accounting firm of Ernst Young, LLP, to ensure CGI's compliance with specifications as set forth in the official procedures.
The sale of 8-ball game tickets to the public commenced on December 12, 1997. Shortly after the sales commenced, several 8-ball tickets were presented to the CLC as alleged winning tickets, bearing game symbols that appeared to be the numeral 8 but which did not match the "eight" symbol caption. An investigation revealed that a printing over-spray had occurred during the production process of the 8-ball game, so that on some tickets the game symbols* and/or* resembled the game symbol*. On all such tickets, the symbol captions printed directly beneath the game symbols read "six" or "nine."
The printing of redundant identification (symbols with matching symbol captions) was intended, in part, to avoid problems that might be created by over-sprays. Indeed, as a result of the number of claims on apparent winning tickets which in fact bore mismatched symbol captions, the 8-ball game was terminated and officially ended on December 27, 1997.
The game symbols and captions are depicted in the official procedures. Exhibit 3, p. 4, attached to CLC's motion for summary judgment. The official procedures provide in § 11(B)(16) that "[a]ny ticket not passing all of the validation checks . . . is void and ineligible for any prize, and will not be paid." By direction of Connecticut state agency regulation § 12-568a-17(e), DRS is prohibited from paying on tickets "lacking in captions that conform and agree with the play symbols."
There is no dispute that the symbols on the plaintiffs' tickets do not agree with the captions. The Connecticut Supreme Court has determined that a purchaser of a lottery ticket agrees to abide by the lottery regulations and is bound by-the official procedures of the particular game. Fullerton v. Dept. of Revenue Services, 245 Conn. 601, 608-09,714 A.2d 1203 (1998) Also see 38 Am. Jur.2d Gambling, § 247. Courts in other jurisdictions have enforced lottery rules denying payment for misprinted tickets. The Georgia Court of Appeals in Georgia LotteryCorp. v. Sumner, 242 Ga. App. 758, 529 S.E.2d 925, (2000), held that summary judgment should have entered when it was undisputed that the CT Page 16122 alleged winning ticket at issue was irregular, and that it did not pass all validation and security tests. In that case, the winning symbol on the ticket did not match the caption as a result of a stray printing mark. The court: held that as a matter of contract law, players are bound by the lottery rules, and the Georgia Lottery Corporation, like the CLC and DRS, is prohibited under its rules from paying prize money on erroneously printed tickets that do not pass validation and security tests. See also Valenti v. Rhode Island Lottery Commission, 544 A.2d 586,590 (R.I. 1988) (defective ticket that failed validation tests could not be declared a winner because a condition on the back of ticket rendered it void if it failed any lottery validation requirement); and Ruggierov. State Lottery Commission, 489 N.E.2d 1022 (Mass.App.Ct. 1986) (misprinted ticket that did not pass validation requirement was determined ineligible for prize payment). For the same reason, the plaintiffs are precluded as a matter of law from prevailing on their claims in this case.
To overcome this legal result, the plaintiffs contend that the official procedures of the 8-ball game were not enacted in accordance with the Administrative Procedures Act, General Statutes § 1-121(a), and therefore are void and unenforceable. That statute, however, specifically provides that it "shall not apply to the Connecticut Lottery Corporation, established pursuant to section 12-802, prior to July 1, 1997." The official procedures were implemented prior to July 1, 1997, and they have not: been altered since such date. Accordingly, they cannot be subject to General Statutes § 1-121(a).
The plaintiffs also argue that the official procedures were not adopted by the CLC when it assumed operation of the lottery in 1996. The undisputed facts, however, establish that the Connecticut lottery instant games were in effect when the CLC assumed operation of the lottery in July. 1996. The official procedures pertain to all Connecticut instant lottery games. On June 7, 1996, the CLC Board expressly approved continuation of the existing game categories, including instant ticket games subject to the official procedures. Thus, the CLC board did approve the official procedures.
As noted above in footnote 1, seven additional cases are before this court on an identical motion for summary judgment filed by the CLC. Amended complaints dated March 3, 2000, were filed in the Gawitt andShea cases, containing claims for innocent, negligent and intentional misrepresentation. CLC's motion for summary judgment addresses these claims separately.
Gawitt and Shea allege that information printed on the face of each 8-ball ticket falsely represents that if the ticket holder gets an 8-ball CT Page 16123 image (*)on either table of the game card, he or she is entitled to all six prizes for each table.
The amended complaint partially omits and therefore misquotes the terms inscribed on each ticket, which include the statement that the caption must be adjacent to the symbol. Gawitt and Shea therefore have failed to identify a false representation. As a matter of law (see Fullerton v.Dept. of Revenue Services, supra, 245 Conn. 608-09), the instant lottery games are subject to the official procedures requiring the symbols to match their captions.
For the above reasons, summary judgment enters for the CLC on all issues in all eight cases.[2]
ROBERT F. McWEENY, J.